UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

TETYANA TSVIK

                                        Plaintiff,

                    -against-

BYANCA G. MEDLEY, PV HOLDING CORP., RASIER
LLC, PORTIER LLC AND UBER TECHNOLOGIES INC.

                                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**JURY DEMANDED**

Docket No.:

Plaintiff, by her attorneys, **LAW OFFICES OF WILLIAM PAGER**, complaining of the

defendants, respectfully alleges, upon information and belief:

## JURISDICTIONAL STATEMENT

1.   That jurisdiction herein exists based upon the complete diversity of citizenship, in that the

Plaintiff and the Defendants are citizens of different states. This is a diversity action brought

pursuant to 28 U.S.C. § 1332(a)

2.   Each of the named Defendants conducts business in New York, acts in New York in

connection with the instant claim, and the named defendants have critical business connections with

New York.

3.   Therefore, the named defendants are "present" in New York for jurisdictional purposes.

CPLR § 302(a).

4.   That at all times herein mentioned, Plaintiff **TETYANA TSVIK** was, and still is, a

resident of the County of Richmond, State of New York.

1

5.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** was, and still is, a foreign corporation, duly organized and existing under and by virtue of the laws of the State of Delaware.

6.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** was, and still is, a foreign entity, duly organized and existing under and by virtue of the laws of the State of Delaware.

7.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** was, and still is, a foreign corporation, duly authorized to do business in the State of New York.

8.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** was, and still is, a subject of long arm statutes of the State of New York.

9.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** maintained a principle place of business in the State of Delaware, located at 151 N Dupont Parkway, New Castle, DE 19720.

10.  That at all times herein mentioned, Defendant **PV HOLDING CORP.** was the owner of a 2020 Nissan motor vehicle bearing Florida State plate number LCYN96.

11.  That at all times herein mentioned, Defendant **RASIER LLC** was, and still is, a foreign entity, duly organized and existing under and by virtue of the laws of the State of California.

12.  That at all times herein mentioned, Defendant **RASIER LLC** was, and still is, a foreign corporation, duly authorized to do business in the State of New York.

13.  That at all times herein mentioned, Defendant **RASIER LLC** was, and still is, a subject of long arm statutes of the State of New York.

14.  That at all times herein mentioned, Defendant **RASIER LLC** maintained a principle place of business in the State of California, located at 1455 Market St, San Francisco, CA 94103.

15.  That at all times herein mentioned, Defendant **RASIER LLC** was the owner of a 2020 Nissan motor vehicle bearing Florida State plate number LCYN96.

16. That at all times herein mentioned, Defendant **PORTIER LLC** was, and still is, a foreign corporation, duly organized and existing under and by virtue of the laws of the State of California.

17. That at all times herein mentioned, Defendant **PORTIER LLC** was, and still is, a foreign entity, duly organized and existing under and by virtue of the laws of the State of California.

18. That at all times herein mentioned, Defendant **PORTIER LLC** was, and still is, a foreign corporation, duly authorized to do business in the State of New York.

19. That at all times herein mentioned, Defendant **PORTIER LLC** was, and still is, a subject of long arm statutes of the State of New York.

20. That at all times herein mentioned, Defendant **PORTIER LLC** maintained a principle place of business in the State of California, located at 1515 3rd Street, San Francisco, CA 94158.

21.  That at all times herein mentioned, Defendant **PORTIER LLC** was the owner of a 2020 Nissan motor vehicle bearing Florida State plate number LCYN96.

22. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** was, and still is, a foreign corporation, duly organized and existing under and by virtue of the laws of the State of New York.

23. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** was, and still is conducting business in the State of New York.

24. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** engaged in business in the State of New York.

25. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** derived substantial revenue from engaging in business in the State of New York.

26. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** engaged individuals to operate motor vehicles as livery drivers.

27. Upon information and belief, that at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** engaged Defendant **BYANCA G. MEDLEY** to operate a motor vehicle as a livery driver.

28. Upon information and belief, that at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was employed by Defendant **UBER TECHNOLOGIES INC.**

29. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES, INC.** was the owner of a 2020 Nissan motor vehicle bearing Florida State plate number LCYN96.

30. Upon information and belief, that at all times herein mentioned, Defendant **PV HOLDING** engaged Defendant **BYANCA G. MEDLEY** to operate a motor vehicle as a livery driver.

31. Upon information and belief, that at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was employed by Defendant **PV HOLDING.**

32. Upon information and belief, that at all times herein mentioned, Defendant **PORTIER LLC.** engaged Defendant **BYANCA G. MEDLEY** to operate a motor vehicle as a livery driver.

33. Upon information and belief, that at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was employed by Defendant **PORTIER LLC**

34. Upon information and belief, that at all times herein mentioned, Defendant **RASIER LLC** engaged Defendant **BYANCA G. MEDLEY** to operate a motor vehicle as a livery driver.

35. Upon information and belief, that at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was employed by Defendant **RASIER LLC**

36. The incident complained of herein occurred in the State of New Jersey.

37. The amount in controversy exceeds, exclusive of interest and costs, $150,000.00.

38. The federal venue statute provides that a civil action based on diversity may be brought in one of three places: (1) where all the plaintiffs reside; (2) where all the defendants reside; or (3) where the claim arose. 28 U.S.C.S. § 1391(a).

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF TETYANA TSVIK**

39. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was, and still is, a resident of the State of New Jersey.

40. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was, and still is, a subject of long arm statutes of the State of New York.

41. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was the operator of a 2020 Nissan motor vehicle bearing Florida State plate number LCYN96.

42. That at all times herein mentioned, Defendant **PORTIER LLC** is a wholly owned subsidiary of the Defendant **UBER TECHNOLOGIES, INC.**

43. Upon information and belief, that at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was an agent for Defendant **UBER TECHNOLOGIES INC.**

44. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** operated the aforesaid motor vehicle pursuant to a written agreement with Defendant **UBER TECHNOLOGIES INC.,** by which she operated the vehicle as an agent and employee of Defendant **UBER TECHNOLOGIES INC.**

45. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the permission of its owner Defendant **PV HOLDING CORP..**

46. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the permission of its owner Defendant **RASIER LLC**.

47. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the permission of its owner Defendant **PORTIER LLC.**

48. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the permission of its owner Defendant **UBER TECHNOLOGIES INC..**

49. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the knowledge of its owner Defendant **PV HOLDING CORP..**

50. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the knowledge of its owner Defendant **RASIER LLC**.

51. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the knowledge of its owner Defendant **PORTIER LLC.**

52. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the knowledge of its owner Defendant **UBER TECHNOLOGIES INC.**.

53. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the consent of its owner Defendant **PV HOLDING CORP.**.

54. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the consent of its owner Defendant **RASIER LLC**.

55. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the consent of its owner Defendant **PORTIER LLC.**.

56. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle with the consent of its owner Defendant **UBER TECHNOLOGIES INC.**.

57. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle within scope of her employment with its owner Defendant **PV HOLDING CORP.**.

58. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle within scope of her employment with its owner Defendant **RASIER LLC.**.

59. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle within scope of her employment with its owner Defendant **PORTIER LLC.**.

60. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** was operating the aforementioned motor vehicle within scope of her employment with its owner Defendant **UBER TECHNOLOGIES INC.**.

61. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** operated and controlled the aforesaid motor vehicle in the capacity of a driver for Defendant **UBER TECHNOLOGIES INC.,** an international company providing car service "on demand" for millions of riders annually.

62. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** operated and controlled the aforesaid motor vehicle in the capacity of a driver for Defendant **PV HOLDING CORP.,** an international company providing car service "on demand" for millions of riders annually.

63. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** operated and controlled the aforesaid motor vehicle in the capacity of a driver for Defendant **RASIER LLC,** an international company providing car service "on demand" for millions of riders annually.

64. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** operated and controlled the aforesaid motor vehicle in the capacity of a driver for Defendant **PORTIER LLC,** an international company providing car service "on demand" for millions of riders annually.

65. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** paid for and downloaded proprietary software of the Defendant

**UBER TECHNOLOGIES INC.,** that enabled her to communicate with and transport passengers also using Defendant's proprietary software.

66. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** paid for and downloaded proprietary software of the Defendant **PV HOLDING CORP.,** that enabled her to communicate with and transport passengers also using Defendant's proprietary software.

67. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** paid for and downloaded proprietary software of the Defendant **RASIER LLC,** that enabled her to communicate with and transport passengers also using Defendant's proprietary software.

68. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** paid for and downloaded proprietary software of the Defendant **PORTIER LLC,** that enabled her to communicate with and transport passengers also using Defendant's proprietary software.

69. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** signed a contract with Defendant **UBER TECHNOLOGIES INC.,** that enabled her to become an UBER driver and access software the enabled her to receive requests for UBER rides from passengers.

70. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** signed a contract with Defendant **PV HOLDING CORP.,** that enabled her to become an UBER driver and access software the enabled her to receive requests for UBER rides from passengers.

71. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** signed a contract with Defendant **RASIER LLC,** that enabled her to become an UBER driver and access software the enabled her to receive requests for UBER rides from passengers.

72. Upon information and belief, that at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** signed a contract with Defendant **PORTIER LLC,** that enabled her to become an UBER driver and access software the enabled her to receive requests for UBER rides from passengers.

73. Defendant **UBER TECHNOLOGIES INC.,** controlled the manner in which Defendant **BYANCA G. MEDLEY** provided services as an UBER driver.

74. As an UBER driver, Defendant **BYANCA G. MEDLEY** depended entirely upon Defendant **UBER TECHNOLOGIES INC.** to earn a living.

75. As an UBER driver, Defendant **BYANCA G. MEDLEY** depended entirely upon Defendant **PV HOLDING CORP.** to earn a living.

76. As an UBER driver, Defendant **BYANCA G. MEDLEY** depended entirely upon Defendant **RASIER LLC** to earn a living.

77. As an UBER driver, Defendant **BYANCA G. MEDLEY** depended entirely upon Defendant **PORTIER LLC** to earn a living.

78. Without her contract with Defendant **UBER TECHNOLOGIES INC.,** and permission to use its proprietary software which provided passengers for fares, Defendant **BYANCA G. MEDLEY** would not have been able to serve as an UBER driver.

79. Without her contract with Defendant **PV HOLDING CORP.,** and permission to use its proprietary software which provided passengers for fares, Defendant **BYANCA G. MEDLEY** would not have been able to serve as an UBER driver.

80. Without her contract with Defendant **RASIER LLC,** and permission to use its proprietary software which provided passengers for fares, Defendant **BYANCA G. MEDLEY** would not have been able to serve as an UBER driver.

81. Without her contract with Defendant **PORTIER LLC,** and permission to use its proprietary software which provided passengers for fares, Defendant **BYANCA G. MEDLEY** would not have been able to serve as an UBER driver.

82. Defendant **BYANCA G. MEDLEY** depends upon the business of Defendant **UBER TECHNOLOGIES INC.,** for opportunities to provide services as an UBER driver.

83. Defendant **BYANCA G. MEDLEY** depends upon the business of Defendant **PV HOLDING CORP.,** for opportunities to provide services as an UBER driver.

84. Defendant **BYANCA G. MEDLEY** depends upon the business of Defendant **RASIER LLC,** for opportunities to provide services as an UBER driver.

85. Defendant **BYANCA G. MEDLEY** depends upon the business of Defendant **PORTIER LLC,** for opportunities to provide services as an UBER driver.

86. As an UBER driver, Defendant **BYANCA G. MEDLEY** was subject to the control of Defendant **UBER TECHNOLOGIES INC.,** through its policies, procedures and its proprietary software.

87. As an UBER driver, Defendant **BYANCA G. MEDLEY** was subject to the control of Defendant **PV HOLDING CORP.,** through its policies, procedures and its proprietary software.

88. As an UBER driver, Defendant **BYANCA G. MEDLEY** was subject to the control of Defendant **RASIER LLC,** through its policies, procedures and its proprietary software.

89. As an UBER driver, Defendant **BYANCA G. MEDLEY** was subject to the control of Defendant **PORTIER LLC,** through its policies, procedures and its proprietary software.

90. Defendant **BYANCA G. MEDLEY** could not, and does not, influence corporate policy of Defendant **UBER TECHNOLOGIES INC.**

91. Defendant **BYANCA G. MEDLEY** could not, and does not, influence corporate policy of Defendant **PV HOLDING CORP.**

92. Defendant **BYANCA G. MEDLEY** could not, and does not, influence corporate policy of Defendant **RASIER LLC.**

93. Defendant **BYANCA G. MEDLEY** could not, and does not, influence corporate policy of Defendant **PORTIER LLC.**

94. Defendant **UBER TECHNOLOGIES INC.** required that Defendant **BYANCA G. MEDLEY** post a sign with the logo "**UBER**" on it that it was viewable from outside of the subject vehicle to passerby, pedestrians and "**UBER**" customers/riders.

95. Defendant **PV HOLDING CORP.** required that Defendant **BYANCA G. MEDLEY** post a sign with the logo "**UBER**" on it that it was viewable from outside of the subject vehicle to passerby, pedestrians and "**UBER**" customers/riders.

96. Defendant **RASIER LLC** required that Defendant **BYANCA G. MEDLEY** post a sign with the logo "**UBER**" on it that it was viewable from outside of the subject vehicle to passerby, pedestrians and "**UBER**" customers/riders.

97. Defendant **PORTIER LLC** required that Defendant **BYANCA G. MEDLEY** post a sign with the logo **"UBER"** on it that it was viewable from outside of the subject vehicle to passerby, pedestrians and **"UBER"** customers/riders.

98. Utilizing proprietary software, Defendant **UBER TECHNOLOGIES INC.** controlled and limited the geographic range or "territory" in which Defendant **BYANCA G. MEDLEY** could operate as an UBER driver. By **UBER TECHNOLOGIES INC.** agreement with UBER driver's, a drivers "territory" means the city or metro area in the United States in which he or she is enabled by the "Drive App" to receive "Transportation Services".

99. Utilizing proprietary software, Defendant **PV HOLDING CORP.** controlled and limited the geographic range or "territory" in which Defendant **BYANCA G. MEDLEY** could operate as an UBER driver. By **PV HOLDING CORP.** agreement with UBER driver's, a drivers "territory" means the city or metro area in the United States in which he or she is enabled by the "Drive App" to receive "Transportation Services".

100. Utilizing proprietary software, Defendant **RASIER LLC** controlled and limited the geographic range or "territory" in which Defendant **BYANCA G. MEDLEY** could operate as an UBER driver. By **RASIER LLC** agreement with UBER driver's, a drivers "territory" means the city or metro area in the United States in which he or she is enabled by the "Drive App" to receive "Transportation Services".

101. Utilizing proprietary software, Defendant **PORTIER LLC** controlled and limited the geographic range or "territory" in which Defendant **BYANCA G. MEDLEY** could operate as an UBER driver. By **PORTIER LLC** agreement with UBER driver's, a drivers "territory" means the

city or metro area in the United States in which he or she is enabled by the "Drive App" to receive "Transportation Services".

102.  Defendant **BYANCA G. MEDLEY** worked for Defendant **UBER TECHNOLOGIES INC.** pursuant to a contract and worked pursuant to that contract on the date and time of the subject accident described below.

103.  Defendant **BYANCA G. MEDLEY** worked for Defendant **PV HOLDING CORP.** pursuant to a contract and worked pursuant to that contract on the date and time of the subject accident described below.

104.  Defendant **BYANCA G. MEDLEY** worked for Defendant **RASIER LLC** pursuant to a contract and worked pursuant to that contract on the date and time of the subject accident described below.

105.  Defendant **BYANCA G. MEDLEY** worked for Defendant **PORTIER LLC** pursuant to a contract and worked pursuant to that contract on the date and time of the subject accident described below.

106.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** entered into contract with drivers requiring them to use **UBER TECHNOLOGIES INC.'s** software applications to perform their functions as an UBER driver.

107.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** entered into contract with drivers requiring them to use **UBER TECHNOLOGIES INC.'s** software applications to perform their functions as an UBER driver.

108. Prior to and including June 1, 2022, Defendant **RASIER LLC** entered into contract with drivers requiring them to use **UBER TECHNOLOGIES INC.'s** software applications to perform their functions as an UBER driver.

109. Prior to and including June 1, 2022, Defendant **PORTIER LLC** entered into contract with drivers requiring them to use **UBER TECHNOLOGIES INC.'s** software applications to perform their functions as an UBER driver.

110. Defendant **UBER TECHNOLOGIES INC.** and Defendant **PV HOLDING CORP.** function a single enterprise.

111. Defendant **UBER TECHNOLOGIES INC.** and Defendant **RASIER LLC** function a single enterprise.

112. Defendant **UBER TECHNOLOGIES INC.** and Defendant **PORTIER LLC** function a single enterprise.

113. Defendant **UBER TECHNOLOGIES INC.** facilitates the employment of drivers by Defendant **PV HOLDING CORP.**

114. Defendant **UBER TECHNOLOGIES INC.** facilitates the employment of drivers by Defendant **RASIER LLC**

115. Defendant **UBER TECHNOLOGIES INC.** facilitates the employment of drivers by Defendant **PORTIER LLC.**

116. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** drafted contracts that enabled drivers to use software of Defendant **UBER TECHNOLOGIES INC.** Without the usage of **UBER TECHNOLOGIES INC.'s** software, drivers like Defendant **BYANCA G. MEDLEY** could not become UBER drivers or perform their functions as UBER drivers.

117. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** drafted contracts that enabled drivers to use software of Defendant **UBER TECHNOLOGIES INC.** Without the usage of **UBER TECHNOLOGIES INC.'s** software, drivers like Defendant **BYANCA G. MEDLEY** could not become UBER drivers or perform their functions as UBER drivers.

118. Prior to and including June 1, 2022, Defendant **RASIER LLC** drafted contracts that enabled drivers to use software of Defendant **UBER TECHNOLOGIES INC.** Without the usage of **UBER TECHNOLOGIES INC.'s** software, drivers like Defendant **BYANCA G. MEDLEY** could not become UBER drivers or perform their functions as UBER drivers.

119. Prior to and including June 1, 2022, Defendant **PORTIER LLC** drafted contracts that enabled drivers to use software of Defendant **UBER TECHNOLOGIES INC.** Without the usage of **UBER TECHNOLOGIES INC.'s** software, drivers like Defendant **BYANCA G. MEDLEY** could not become UBER drivers or perform their functions as UBER drivers.

120. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** licensed mobile application **technology** from Defendant **UBER TECHNOLOGIES INC.** and arranged for drivers to use the application.

121. Prior to and including June 1, 2022, Defendant **RASIER LLC** licensed mobile application **technology** from Defendant **UBER TECHNOLOGIES INC.** and arranged for drivers to use the application.

122. Prior to and including June 1, 2022, Defendant **PORTIER LLC** licensed mobile application **technology** from Defendant **UBER TECHNOLOGIES INC.** and arranged for drivers to use the application.

123. Using the application **technology** of Defendant **UBER TECHNOLOGIES INC.,** drivers like Defendant **BYANCA G. MEDLEY** were able to accept requests for transportation from potential riders.

124. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** Defendant **PV HOLDING CORP.,** Defendant **RASIER LLC,** and Defendant **PORTIER LLC** were named as primary insured and additional insured respectively, on insurance policies covering their business operations and negligence claims.

125. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** issued receipts to drivers upon brining UBER passengers to their destination.

126. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.,** issued receipts to drivers upon brining UBER passengers to their destination.

127. Prior to and including June 1, 2022, Defendant **RASIER LLC,** issued receipts to drivers upon brining UBER passengers to their destination.

128. Prior to and including June 1, 2022, Defendant **PORTIER LLC,** issued receipts to drivers upon brining UBER passengers to their destination.

129. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** coordinated payment to drivers such as Defendant **BYANCA G. MEDLEY**.

130. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.,** coordinated payment to drivers such as Defendant **BYANCA G. MEDLEY**.

131. Prior to and including June 1, 2022, Defendant **RASIER LLC,** coordinated payment to drivers such as Defendant **BYANCA G. MEDLEY**.

132. Prior to and including June 1, 2022, Defendant **PORTIER LLC,** coordinated payment to drivers such as Defendant **BYANCA G. MEDLEY**.

133. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** could not engage in its transportation business without the activities of Defendant **PV HOLDING CORP.**

134. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** could not engage in its transportation business without the activities of Defendant **RASIER LLC.**

135. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** could not engage in its transportation business without the activities of Defendant **PORTIER LLC.**

136. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** dominated and controlled the activities of Defendant **PV HOLDING CORP.** with respect to the employment of drivers, licensing of software, means by which drivers transported passengers using "UBER" and management of drivers.

137. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** dominated and controlled the activities of Defendant **RASIER LLC** with respect to the employment of drivers, licensing of software, means by which drivers transported passengers using "UBER" and management of drivers.

138. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** dominated and controlled the activities of Defendant **PORTIER LLC** with respect to the employment of drivers, licensing of software, means by which drivers transported passengers using "UBER" and management of drivers.

139.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **PV HOLDING CORP.** served as representatives, agents, joint venture participants and/or alter egos of each other.

140.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **RASIER LLC** served as representatives, agents, joint venture participants and/or alter egos of each other.

141.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **PORTIER LLC** served as representatives, agents, joint venture participants and/or alter egos of each other.

142.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **PV HOLDING CORP.** operated in concert to manage, promote and sell the business of a transportation network.

143.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **RASIER LLC** operated in concert to manage, promote and sell the business of a transportation network.

144.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** and Defendant **PORTIER LLC** operated in concert to manage, promote and sell the business of a transportation network.

145.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.,** Defendant **PV HOLDING CORP.,** Defendant **RASIER LLC** and Defendant **PORTIER LLC** operated in concert to manage, promote and sell the business of a transportation network.

146. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.,** was undercapitalized and relied upon the financial resources of Defendant **UBER TECHNOLOGIES INC.** to function.

147. Prior to and including June 1, 2022, Defendant **RASIER LLC,** was undercapitalized and relied upon the financial resources of Defendant **UBER TECHNOLOGIES INC.** to function.

148. Prior to and including June 1, 2022, Defendant **PORTIER LLC,** was undercapitalized and relied upon the financial resources of Defendant **UBER TECHNOLOGIES INC.** to function.

149. At all relevant times, the finances of Defendant **PV HOLDING CORP.,** have been intermingled with the finances of Defendant **UBER TECHNOLOGIES INC.**

150. At all relevant times, the finances of Defendant **RASIER LLC,** have been intermingled with the finances of Defendant **UBER TECHNOLOGIES INC.**

151. At all relevant times, the finances of Defendant **PORTIER LLC,** have been intermingled with the finances of Defendant **UBER TECHNOLOGIES INC.**

152. At all relevant times, the finances of Defendant **PV HOLDING CORP.,** obtained the funding to operate from its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

153. At all relevant times, the finances of Defendant **RASIER LLC,** obtained the funding to operate from its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

154. At all relevant times, the finances of Defendant **PORTIER LLC,** obtained the funding to operate from its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

155.  At all relevant times, the finances of Defendant **PV HOLDING CORP.,** was a mere façade for its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

156.  At all relevant times, the finances of Defendant **RASIER LLC,** was a mere façade for its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

157.  At all relevant times, the finances of Defendant **PORTIER LLC,** was a mere façade for its parent company and/or sole member, Defendant **UBER TECHNOLOGIES INC.**

158.  At all relevant times, the finances of Defendant **PV HOLDING CORP.,** was the alter ego of Defendant **UBER TECHNOLOGIES INC.**

159.  At all relevant times, the finances of Defendant **RASIER LLC,** was the alter ego of Defendant **UBER TECHNOLOGIES INC.**

160.  At all relevant times, the finances of Defendant **PORTIER LLC,** was the alter ego of Defendant **UBER TECHNOLOGIES INC.**

161.  It would be inequitable and unjust to impose any real distinction between Defendant **UBER TECHNOLOGIES INC.,** Defendant **PV HOLDING CORP.,** Defendant **RASIER LLC** and Defendant **PORTIER LLC.**

162.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** and Defendant **PV HOLDING CORP.,** functioned as a single enterprise, with joint economic, budgetary and operational planning.

163.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** and Defendant **RASIER LLC,** functioned as a single enterprise, with joint economic, budgetary and operational planning.

164.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** and Defendant **PORTIER LLC,** functioned as a single enterprise, with joint economic, budgetary and operational planning.

165.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** developed, distributed and relied upon proprietary software program(s) to operate their transportation business.

166.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** developed, distributed and relied upon proprietary software program(s) to operate their transportation business.

167.  Prior to and including June 1, 2022, Defendant **RASIER LLC** developed, distributed and relied upon proprietary software program(s) to operate their transportation business.

168.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** developed, distributed and relied upon proprietary software program(s) to operate their transportation business.

169.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** dictated how Defendant **BYANCA G. MEDLEY** was to use its software program(s) to carry out work as an UBER driver.

170.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** dictated how Defendant **BYANCA G. MEDLEY** was to use its software program(s) to carry out work as an UBER driver.

171.  Prior to and including June 1, 2022, Defendant **RASIER LLC** dictated how Defendant **BYANCA G. MEDLEY** was to use its software program(s) to carry out work as an UBER driver.

172. Prior to and including June 1, 2022, Defendant **PORTIER LLC** dictated how Defendant **BYANCA G. MEDLEY** was to use its software program(s) to carry out work as an UBER driver.

173. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY** was required to use **UBER TECHNOLOGIES INC.** software program(s) to carry out work as an UBER driver.

174. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY** was required to use **PV HOLDING CORP.** software program(s) to carry out work as an UBER driver.

175. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY** was required to use **RASIER LLC** software program(s) to carry out work as an UBER driver.

176. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY** was required to use **PORTIER LLC** software program(s) to carry out work as an UBER driver.

177. Prior to and including June 1, 2022, as an UBER driver, Defendant **BYANCA G. MEDLEY** was required to transport the passengers who summoned her via Defendant **UBER TECHNOLOGIES INC.** proprietary software.

178. Prior to and including June 1, 2022, as an UBER driver, Defendant **BYANCA G. MEDLEY** was required to transport the passengers who summoned her via Defendant **PV HOLDING CORP.** proprietary software.

179. Prior to and including June 1, 2022, as an UBER driver, Defendant **BYANCA G. MEDLEY** was required to transport the passengers who summoned her via Defendant **RASIER LLC** proprietary software.

180. Prior to and including June 1, 2022, as an UBER driver, Defendant **BYANCA G. MEDLEY** was required to transport the passengers who summoned her via Defendant **PORTIER LLC** proprietary software.

181. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY's** contract with Defendant **UBER TECHNOLOGIES INC.** prohibited her from declining a fare based upon the requested destination.

182. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY's** contract with Defendant **PV HOLDING CORP.** prohibited her from declining a fare based upon the requested destination.

183. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY's** contract with Defendant **RASIER LLC** prohibited her from declining a fare based upon the requested destination.

184. Prior to and including June 1, 2022, Defendant **BYANCA G. MEDLEY's** contract with Defendant **PORTIER LLC** prohibited her from declining a fare based upon the requested destination.

185. Prior to and including June 1, 2022, through operation of the "UBER" software application, Defendant **BYANCA G. MEDLEY** was not advised of a new passenger's destination until that passenger was picked up.

186. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** conducted background checks of candidates before allowing them to serve as UBER drivers, and continue making background checks of its UBER drivers thereafter.

24

187.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** conducted background checks of candidates before allowing them to serve as UBER drivers, and continue making background checks of its UBER drivers thereafter.

188.  Prior to and including June 1, 2022, Defendant **RASIER LLC** conducted background checks of candidates before allowing them to serve as UBER drivers, and continue making background checks of its UBER drivers thereafter.

189.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** conducted background checks of candidates before allowing them to serve as UBER drivers, and continue making background checks of its UBER drivers thereafter.

190.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** described a corporate requirement that drivers complete video training for the prevention of the facilitation of sex trafficking on a website devoted to its New York City drivers.

191.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** did not require that its drivers have unique skills of the type that independent contractor would.

192.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** did not require that its drivers have unique skills of the type that independent contractor would.

193.  Prior to and including June 1, 2022, Defendant **RASIER LLC** did not require that its drivers have unique skills of the type that independent contractor would.

194.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** did not require that its drivers have unique skills of the type that independent contractor would.

195.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provided training to its drivers.

196. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provided training to its drivers.

197. Prior to and including June 1, 2022, Defendant **RASIER LLC** provided training to its drivers.

198. Prior to and including June 1, 2022, Defendant **PORTIER LLC** provided training to its drivers.

199. Defendant **UBER TECHNOLOGIES INC.** provided training to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

200. Defendant **PV HOLDING CORP.** provided training to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

201. Defendant **RASIER LLC** provided training to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

202. Defendant **PORTIER LLC** provided training to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

203. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** assisted its drivers in securing the needed clearance and licenses.

204. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** assisted its drivers in securing the needed clearance and licenses.

205. Prior to and including June 1, 2022, Defendant **RASIER LLC** assisted its drivers in securing the needed clearance and licenses.

206. Prior to and including June 1, 2022, Defendant **PORTIER LLC** assisted its drivers in securing the needed clearance and licenses.

26

207. Defendant **UBER TECHNOLOGIES INC.** assisted Defendant **BYANCA G. MEDLEY** in securing the needed clearance and licenses to drive as an "UBER" driver prior to an including June 1, 2022.

208. Defendant **PV HOLDING CORP.** assisted Defendant **BYANCA G. MEDLEY** in securing the needed clearance and licenses to drive as an "UBER" driver prior to an including June 1, 2022.

209. Defendant **RASIER LLC** assisted Defendant **BYANCA G. MEDLEY** in securing the needed clearance and licenses to drive as an "UBER" driver prior to an including June 1, 2022.

210. Defendant **PORTIER LLC** assisted Defendant **BYANCA G. MEDLEY** in securing the needed clearance and licenses to drive as an "UBER" driver prior to an including June 1, 2022.

211. Prior to and including June 1, 2022, defendant in New York City, Defendant **UBER TECHNOLOGIES INC.** assisted its drivers in securing licences from the City Taxi and Limousine Commission.

212. Prior to and including June 1, 2022, defendant in New York City, Defendant **PV HOLDING CORP.** assisted its drivers in securing licences from the City Taxi and Limousine Commission.

213. Prior to and including June 1, 2022, defendant in New York City, Defendant **RASIER LLC** assisted its drivers in securing licences from the City Taxi and Limousine Commission.

214. Prior to and including June 1, 2022, defendant in New York City, Defendant **PORTIER LLC** assisted its drivers in securing licences from the City Taxi and Limousine Commission.

27

215. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** assisted Defendant **BYANCA G. MEDLEY** in securing licences from the City Taxi and Limousine Commission.

216. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** assisted Defendant **BYANCA G. MEDLEY** in securing licences from the City Taxi and Limousine Commission.

217. Prior to and including June 1, 2022, Defendant **RASIER LLC** assisted Defendant **BYANCA G. MEDLEY** in securing licences from the City Taxi and Limousine Commission.

218. Prior to and including June 1, 2022, Defendant **PORTIER LLC** assisted Defendant **BYANCA G. MEDLEY** in securing licences from the City Taxi and Limousine Commission.

219. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to prospective drivers.

220. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to prospective drivers.

221. Prior to and including June 1, 2022, Defendant **RASIER LLC** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to prospective drivers.

222. Prior to and including June 1, 2022, Defendant **PORTIER LLC** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to prospective drivers.

28

223. Defendant **UBER TECHNOLOGIES INC.** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

224. Defendant **PV HOLDING CORP.** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

225. Defendant **RASIER LLC** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

226. Defendant **PORTIER LLC** provided defensive driving course required by the City Taxi and Limousine Commission free of charge to Defendant **BYANCA G. MEDLEY** on or before June 1, 2022.

227. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provided its drivers with a medical examination mandated by City Taxi and Limousine Commission.

228. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provided its drivers with a medical examination mandated by City Taxi and Limousine Commission.

229. Prior to and including June 1, 2022, Defendant **RASIER LLC** provided its drivers with a medical examination mandated by City Taxi and Limousine Commission.

230. Prior to and including June 1, 2022, Defendant **PORTIER LLC** provided its drivers with a medical examination mandated by City Taxi and Limousine Commission.

231. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provided Defendant **BYANCA G. MEDLEY** with a medical examination mandated by City Taxi and Limousine Commission.

232. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provided Defendant **BYANCA G. MEDLEY** with a medical examination mandated by City Taxi and Limousine Commission.

233. Prior to and including June 1, 2022, Defendant **RASIER LLC** provided Defendant **BYANCA G. MEDLEY** with a medical examination mandated by City Taxi and Limousine Commission.

234. Prior to and including June 1, 2022, Defendant **PORTIER LLC** provided Defendant **BYANCA G. MEDLEY** with a medical examination mandated by City Taxi and Limousine Commission.

235. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** required that Defendant **BYANCA G. MEDLEY** maintain liability insurance at minimum level required by State and local law.

236. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** required that Defendant **BYANCA G. MEDLEY** maintain liability insurance at minimum level required by State and local law.

237. Prior to and including June 1, 2022, Defendant **RASIER LLC** required that Defendant **BYANCA G. MEDLEY** maintain liability insurance at minimum level required by State and local law.

238. Prior to and including June 1, 2022, Defendant **PORTIER LLC** required that Defendant **BYANCA G. MEDLEY** maintain liability insurance at minimum level required by State and local law.

239. Prior to and including June 1, 2022, to encourage the recruitment of drivers, Defendant **UBER TECHNOLOGIES INC.** offered guaranteed monthly wages.

240. Prior to and including June 1, 2022, to encourage the recruitment of drivers, Defendant **PV HOLDING CORP.** offered guaranteed monthly wages.

241. Prior to and including June 1, 2022, to encourage the recruitment of drivers, Defendant **RASIER LLC** offered guaranteed monthly wages.

242. Prior to and including June 1, 2022, to encourage the recruitment of drivers, Defendant **PORTIER LLC** offered guaranteed monthly wages.

243. Defendant **UBER TECHNOLOGIES INC.** guaranteed monthly wages to Defendant **BYANCA G. MEDLEY** prior to and including June 1, 2022.

244. Defendant **PV HOLDING CORP.** guaranteed monthly wages to Defendant **BYANCA G. MEDLEY** prior to and including June 1, 2022.

245. Defendant **RASIER LLC** guaranteed monthly wages to Defendant **BYANCA G. MEDLEY** prior to and including June 1, 2022.

246. Defendant **PORTIER LLC** guaranteed monthly wages to Defendant **BYANCA G. MEDLEY** prior to and including June 1, 2022.

247. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** compensated Defendant **BYANCA G. MEDLEY** based upon the rides provided to Defendant **UBER TECHNOLOGIES INC.'s** customer/riders.

31

248.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** compensated Defendant **BYANCA G. MEDLEY** based upon the rides provided to Defendant **PV HOLDING CORP.'s** customer/riders.

249.  Prior to and including June 1, 2022, Defendant **RASIER LLC** compensated Defendant **BYANCA G. MEDLEY** based upon the rides provided to Defendant **RASIER LLC's** customer/riders.

250.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** compensated Defendant **BYANCA G. MEDLEY** based upon the rides provided to Defendant **PORTIER LLC's** customer/riders.

251.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** dictated how much compensation Defendant **BYANCA G. MEDLEY** was to receive from a ride.

252.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** dictated how much compensation Defendant **BYANCA G. MEDLEY** was to receive from a ride.

253.  Prior to and including June 1, 2022, Defendant **RASIER LLC** dictated how much compensation Defendant **BYANCA G. MEDLEY** was to receive from a ride.

254.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** dictated how much compensation Defendant **BYANCA G. MEDLEY** was to receive from a ride.

255.  Prior to and including June 1, 2022, while working as an UBER driver, Defendant **BYANCA G. MEDLEY** could not dictate the price of a passengers trip.

256.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** dictated the rates passengers transported by Defendant **BYANCA G. MEDLEY** were charged.

257. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** dictated the rates passengers transported by Defendant **BYANCA G. MEDLEY** were charged.

258. Prior to and including June 1, 2022, Defendant **RASIER LLC** dictated the rates passengers transported by Defendant **BYANCA G. MEDLEY** were charged.

259. Prior to and including June 1, 2022, Defendant **PORTIER LLC** dictated the rates passengers transported by Defendant **BYANCA G. MEDLEY** were charged.

260. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** could change the rates charged to passengers transported by "UBER" drivers at any time, and advised its drivers that it reserves the right to do so.

261. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** could change the rates charged to passengers transported by "UBER" drivers at any time, and advised its drivers that it reserves the right to do so.

262. Prior to and including June 1, 2022, Defendant **RASIER LLC** could change the rates charged to passengers transported by "UBER" drivers at any time, and advised its drivers that it reserves the right to do so.

263. Prior to and including June 1, 2022, Defendant **PORTIER LLC** could change the rates charged to passengers transported by "UBER" drivers at any time, and advised its drivers that it reserves the right to do so.

264. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provided the electronic means by which passengers would request travel with UBER using Defendant **BYANCA G. MEDLEY** as a driver.

265.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provided the electronic means by which passengers would request travel with UBER using Defendant **BYANCA G. MEDLEY** as a driver.

266.  Prior to and including June 1, 2022, Defendant **RASIER LLC** provided the electronic means by which passengers would request travel with UBER using Defendant **BYANCA G. MEDLEY** as a driver.

267.  Prior to and including June 1, 2022, Defendant **PORTIER LLC** provided the electronic means by which passengers would request travel with UBER using Defendant **BYANCA G. MEDLEY** as a driver.

268.  Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** provides UBER passengers with the opportunity to review and "rate" UBER drivers, such as Defendant **BYANCA G. MEDLEY.** Ratings and reviews of UBER drivers were completed utilizing proprietary software, accessed by passengers via smart-phone or computer.

269.  Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** provides UBER passengers with the opportunity to review and "rate" UBER drivers, such as Defendant **BYANCA G. MEDLEY.** Ratings and reviews of UBER drivers were completed utilizing proprietary software, accessed by passengers via smart-phone or computer.

270.  Prior to and including June 1, 2022, Defendant **RASIER LLC** provides UBER passengers with the opportunity to review and "rate" UBER drivers, such as Defendant **BYANCA G. MEDLEY.** Ratings and reviews of UBER drivers were completed utilizing proprietary software, accessed by passengers via smart-phone or computer.

271. Prior to and including June 1, 2022, Defendant **PORTIER LLC** provides UBER passengers with the opportunity to review and "rate" UBER drivers, such as Defendant **BYANCA G. MEDLEY.** Ratings and reviews of UBER drivers were completed utilizing proprietary software, accessed by passengers via smart-phone or computer.

272. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** required that UBER drivers such as Defendant **BYANCA G. MEDLEY** maintain what they call "minimum average rating" from passengers. Prior to and including June 1, 2022, if UBER drivers did not maintain a "minimum average rating", they would lose access to Defendant **UBER TECHNOLOGIES INC.** proprietary software, and accordingly, the ability to earn money from transporting passengers.

273. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** required that UBER drivers such as Defendant **BYANCA G. MEDLEY** maintain what they call "minimum average rating" from passengers. Prior to and including June 1, 2022, if UBER drivers did not maintain a "minimum average rating", they would lose access to Defendant **PV HOLDING CORP.** proprietary software, and accordingly, the ability to earn money from transporting passengers.

274. Prior to and including June 1, 2022, Defendant **RASIER LLC** required that UBER drivers such as Defendant **BYANCA G. MEDLEY** maintain what they call "minimum average rating" from passengers. Prior to and including June 1, 2022, if UBER drivers did not maintain a "minimum average rating", they would lose access to Defendant **RASIER LLC** proprietary software, and accordingly, the ability to earn money from transporting passengers.

275. Prior to and including June 1, 2022, Defendant **PORTIER LLC** required that UBER drivers such as Defendant **BYANCA G. MEDLEY** maintain what they call "minimum average

rating" from passengers. Prior to and including June 1, 2022, if UBER drivers did not maintain a "minimum average rating", they would lose access to Defendant **PORTIER LLC** proprietary software, and accordingly, the ability to earn money from transporting passengers.

276. Prior to and including June 1, 2022, Defendant **UBER TECHNOLOGIES INC.** set the terms and conditions of Defendant **BYANCA G. MEDLEY's** services as an UBER driver and must be considered to be her employer for the purpose of assessing and imposing vicarious liability.

277. Prior to and including June 1, 2022, Defendant **PV HOLDING CORP.** set the terms and conditions of Defendant **BYANCA G. MEDLEY's** services as an UBER driver and must be considered to be her employer for the purpose of assessing and imposing vicarious liability.

278. Prior to and including June 1, 2022, Defendant **RASIER LLC** set the terms and conditions of Defendant **BYANCA G. MEDLEY's** services as an UBER driver and must be considered to be her employer for the purpose of assessing and imposing vicarious liability.

279. Prior to and including June 1, 2022, Defendant **PORTIER LLC** set the terms and conditions of Defendant **BYANCA G. MEDLEY's** services as an UBER driver and must be considered to be her employer for the purpose of assessing and imposing vicarious liability.

280. That at all times herein mentioned, Defendant **PV HOLDING CORP.** managed the aforementioned motor vehicle.

281. That at all times herein mentioned, Defendant **RASIER LLC** managed the aforementioned motor vehicle.

282. That at all times herein mentioned, Defendant **PORTIER LLC** managed the aforementioned motor vehicle.

283. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** managed the aforementioned motor vehicle.

284. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** managed the aforementioned motor vehicle.

285. That at all times herein mentioned, Defendant **PV HOLDING CORP.** maintained the aforementioned motor vehicle.

286. That at all times herein mentioned, Defendant **RASIER LLC** maintained the aforementioned motor vehicle.

287. That at all times herein mentioned, Defendant **PORTIER LLC** maintained the aforementioned motor vehicle.

288. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** maintained the aforementioned motor vehicle.

289. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** maintained the aforementioned motor vehicle.

290. That at all times herein mentioned, Defendant **PV HOLDING CORP.** controlled the aforementioned motor vehicle.

291. That at all times herein mentioned, Defendant **RASIER LLC** controlled the aforementioned motor vehicle.

292. That at all times herein mentioned, Defendant **PORTIER LLC** controlled the aforementioned motor vehicle.

293. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** controlled the aforementioned motor vehicle.

294. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** controlled the aforementioned motor vehicle.

295. That at all times herein mentioned, Defendant **PV HOLDING CORP.** supervised the aforementioned motor vehicle.

296. That at all times herein mentioned, Defendant **RASIER LLC** supervised the aforementioned motor vehicle.

297. That at all times herein mentioned, Defendant **PORTIER LLC** supervised the aforementioned motor vehicle.

298. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** supervised the aforementioned motor vehicle.

299. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** supervised the aforementioned motor vehicle.

300. That at all times herein mentioned, Defendant **PV HOLDING CORP.** inspected the aforementioned motor vehicle.

301. That at all times herein mentioned, Defendant **RASIER LLC** inspected the aforementioned motor vehicle.

302. That at all times herein mentioned, Defendant **PORTIER LLC** inspected the aforementioned motor vehicle.

303. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** inspected the aforementioned motor vehicle.

304. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** inspected the aforementioned motor vehicle.

305. That at all times herein mentioned, Defendant **PV HOLDING CORP.** repaired the aforementioned motor vehicle.

306. That at all times herein mentioned, Defendant **RASIER LLC** repaired the aforementioned motor vehicle.

307. That at all times herein mentioned, Defendant **PORTIER LLC** repaired the aforementioned motor vehicle.

308. That at all times herein mentioned, Defendant **UBER TECHNOLOGIES INC.** repaired the aforementioned motor vehicle.

309. That at all times herein mentioned, Defendant **BYANCA G. MEDLEY** repaired the aforementioned motor vehicle.

310. That at all times herein mentioned, Plaintiff **TETYANA TSVIK** was the operator of a 2020 Mercedes Benz motor vehicle bearing New York State license plate number JRM2191.

311. That at all times herein mentioned, and on June 1, 2022, at or about Virginia Avenue and Pacific Avenue in Atlantic City, State of New Jersey, were public roadways, streets and/or thoroughfares.

312. That at all times herein mentioned, and on June 1, 2022, Defendant **BYANCA G. MEDLEY** was operating the vehicle owned by Defendant **PV HOLDING CORP.** and/or Defendant **RASIER LLC** and/or Defendant **PORTIER LLC** and/or Defendant **UBER TECHNOLOGIES INC.**, at the aforementioned location.

313. That at all times herein mentioned, and on June 1, 2022, Plaintiff **TETYANA TSVIK** was operating a motor vehicle at the aforementioned location.

314. That at all times herein mentioned, and on June 1, 2022, at the aforementioned location, the motor vehicle owned by Defendant **PV HOLDING CORP.** and/or Defendant **RASIER LLC** and/or Defendant **PORTIER LLC** and/or Defendant **UBER TECHNOLOGIES INC.** and operated by Defendant **BYANCA G. MEDLEY** were involved in a collision the motor vehicle operated by Plaintiff **TETYANA TSVIK**.

315. That as a result of the aforesaid contact, Plaintiff **TETYANA TSVIK** was injured.

316. That the aforesaid occurrence was caused wholly and solely by reason of the negligence of the Defendants without any fault or negligence on the part of the Plaintiff contributing thereto.

317. That Defendants were negligent and careless in the ownership, operation, management, maintenance, supervision, inspection, repair, use and control of the aforesaid vehicle and the Defendants were otherwise negligent and careless under the circumstances then and there prevailing.

318. That by reason of the foregoing, Plaintiff **TETYANA TSVIK** sustained severe and permanent personal injuries; and Plaintiff **TETYANA TSVIK** was otherwise damaged.

319. That Plaintiff **TETYANA TSVIK** sustained serious injuries as defined by §5102(d) of the Insurance Law of the State of New York, (if the law is judicially determined to apply).

320. That Plaintiff **TETYANA TSVIK** sustained serious injuries and economic loss greater than basic economic loss as defined by §5104 of the Insurance Law of the State of New York (if the law is judicially determined to apply).

321. That Plaintiff **TETYANA TSVIK** is not seeking to recover any damages for which Plaintiff has been reimbursed by no-fault insurance and/or for which no-fault insurance is obligated to reimburse plaintiff. Plaintiff is seeking only to recover those damages not recoverable through no-fault insurance under the facts and circumstances in this action.

40

322.   That this action falls within one or more of the exceptions set forth in CPLR §1602.

323.   That by reason of the foregoing, plaintiff **TETYANA TSVIK** has been damaged in the amount of FIVE MILLION ($5,000,000.00) DOLLARS.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims in this action.

Dated:        Brooklyn, New York
              March 18, 2024

                                    Yours, etc.

                                    _____
                                    Law Offices of William Pager
                                    Attorneys for Plaintiff
                                    TETYANA TSVIK
                                    205 Kings Highway
                                    Brooklyn, New York 11223
                                    718-998-1010
                                    Our File No. 4516IM

Docket No.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TETYANA TSVIK

                        Plaintiff,

        -against-

BYANCA G. MEDLEY, PV HOLDING CORP., RASIER LLC, PORTIER LLC AND UBER
TECHNOLOGIES INC.

                        Defendants.

## SUMMONS AND COMPLAINT

### Law Offices of William Pager
*Attorneys for Plaintiff(s)*
**205 Kings Highway**
**Brooklyn, New York 11223**
**Phone: 718-998-1010**
**Fax: 718-998-8046**

*PLEASE TAKE NOTICE*

That the within is a true copy of a                    entered in the office of the clerk of the within
            named Court on

That a          of which the within is a true copy will be presented for settlement to the Hon.
            One of the Judges of the within named Court at                              on
            at 9:30 a.m.

Due and timely service of the within                          is hereby admitted

Dated:

                                    X _____

Attorneys for